**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MICHAEL HOUSTON, *et al.*,<br>Plaintiffs<br><br>v.<br><br>CITY OF CHICAGO, *et al.*,<br>Defendants | No. 20 CV 6720<br><br>Judge Jeremy C. Daniel |

## MEMORANDUM OPINION AND ORDER

After a fire broke out in the plaintiffs' home, the City deemed the home irreparable and concluded that it posed a danger to the public. A month later, the City ordered that the home be demolished. The home was demolished the very day the City issued its demolition order. This case followed. The plaintiffs argue that the same-day demolition violated their rights under the Fourth and Fourteenth Amendments and Illinois state law. For the reasons stated in this opinion and order, the Court grants the defendants summary judgment on the plaintiffs' claims.

## BACKGROUND

In November 2018, a fire broke out inside 4202 S. Vincennes Avenue in Chicago (the "Property").[1] (R. 275 ¶ 11.)[2] Plaintiffs Michael Houston and Yvonne Whitley were

[1] The Property belonged to the estate of Rosie Houston. The plaintiffs are purported beneficiaries of the estate. The Court dismissed the estate's claims for failure to prosecute. (*See* R. 298 (affirming dismissal of estate's claims).) The Court understands the plaintiffs' claims to stem from personal property kept in the Property and presumably lost when the City demolished the Property. The analysis applied to the Property herein applies to the plaintiffs' personal property as well. The Court further notes that the plaintiffs acknowledge that they had time to retrieve personal property from the Property. (*See*, *e.g.*, R. 77 ¶ 18.)

[2] For ECF filings, the Court cites to the page number(s) in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

home, but Plaintiff Steve Houston was not. (*Id.* ¶ 13.) The Chicago Fire Department (CFD) arrived, put out the fire, and soon after produced a report regarding the fire's cause, nature, and scope. (*Id.* ¶¶ 20–24.) The CFD concluded that the Property was "severely structurally compromised/fire damaged." (*Id.*; R. 275-7 at 2, 7.) The next day, Mario Ficco, a Building Inspector for the City's Department of Buildings, was dispatched to inspect the Property. (R. 275 ¶¶ 8, 26.) Ficco took photos, produced a report, and concluded that the Property's heating, plumbing, and electrical functions were inoperable. (*Id.* ¶¶ 27–31; R. 275-12.) Jorge Herrera, the City's Chief Building Inspector, reviewed both reports and the photos and concluded that the Property was irreparable. (R. 275 ¶¶ 4, 59–66; R. 275-9 at 14:17–17:9.) He noted particular concern with the Property's key structural components, including the roof, walls, and rafters. (R. 275 ¶ 46.) Herrera also knew that the winter weather would expedite the Property's deterioration. (*Id.* ¶¶ 61; R. 275-9 at 76:15–25.) Judy Frydland, then the Commissioner of Buildings, also reviewed the reports and determined that the Property was dangerous. (R. 275 ¶¶ 6, 40–43, 50, 52, 59–66.)[3]

[3] The Court refers to Ficco, Herrera, and Frydland as the "individual defendants."

Photos of the property after the fire are shown below:





(R. 275-13 at 2; R. 275-13 at 4.)

The plaintiffs themselves testified to the scope of the damage. Michael said that there was severe damage to the roof and had "no doubt" that water or snow could

get into the Property. (R. 275-11 at 91:15–20, 97:14–22.) He also noted blown out windows and damage to the front and back porches, the interior staircase, and several rooms. (*Id.* at 95:24–97:13.) Steve and Yvonne's testimony corroborates Michael's. (*See* R. 275-10 at 158:18–24 (Steve testifying that "[t]he roof was basically off"); R. 275-2 at 46:4–49:19 (Yvonne noting significant damage to the Property's interior and exterior).) Residents of the neighborhood also expressed concern and many filed complaints with the Alderman, who passed them along to Frydland. (R. 275 ¶ 40.) Ultimately, the individual defendants determined that the Property's susceptibility to sudden collapse created an imminent danger to the public and nearby property. (*Id.* ¶¶ 47–51.) This included risks to first responders, trespassers, children, and other people walking near the Property, along with nearby properties that could be damaged by falling debris. (*Id.* ¶ 50.)

Based on these safety concerns, the individual defendants determined that emergency intervention was necessary. On December 17, 2018, the Department of Buildings issued an Administrative Order finding "clear evidence of structural failures" and that the Property was "in imminent danger of collapse." (*Id.* ¶ 56; R. 275-15.) The Order directed emergency demolition of the Property. The Property was demolished the same day the City posted the Administrative Order. (R. 275 ¶ 58.)

## LEGAL STANDARD

"Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Brown v.*

*Chi. Transit Auth.*, 179 F.4th 577, 588 (7th Cir. 2026).[4] A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant has the burden of establishing that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he moving party may succeed by showing an absence of evidence to support the non-moving party's claims." *Brown*, 179 F.4th at 588 (quoted source omitted).

## ANALYSIS

### I. THE CONSTITUTIONAL CLAIMS

#### A. Fourteenth Amendment Claim

The plaintiffs argue that they were entitled to more process before the demolition. To succeed on a procedural due process claim, the plaintiffs must establish "(1) deprivation of a protected interest, and (2) insufficient procedural protections surrounding that deprivation." *Cannici v. Village of Melrose Park*, 885 F.3d 476, 479 (7th Cir. 2018) (quoted source omitted). "Absent exigent circumstances . . . a pre-deprivation procedure is generally required before the government may deprive a person of his property." *Siebert v. Severino*, 256 F.3d 648, 659 (7th Cir. 2001). It is undisputed that the plaintiffs were deprived of their interest in the Property. The dispute is whether the plaintiffs received the process they were owed.

---

[4] The plaintiffs failed to rebut the defendants' statement of facts with responses that cite to the record or otherwise conform to the local rules. These facts are deemed admitted. *See* L.R. 56.1(e)(3); *Kutrubis v. Kamberos*, 184 F.4th 864, 869–70 (7th Cir. 2026) (affirming district court's decision to deem as admitted facts not properly rebutted under the local rules).

On this record, the Property's dangerous condition was an exigency that justified the Property's emergency demolition. The CFD concluded that the Property was structurally compromised. (R. 275-7.) Ficco conducted his own inspection and reached the same conclusion, noting severe damage to the Property's key structural components. (R. 275-5.) Herrera reviewed the reports and photos, and spoke with CFD and Ficco before determining that the Property posed a public danger. (R. 275 ¶¶ 44–51.) Frydland similarly found the Property to be unsafe. (*Id.* ¶¶ 59, 62–63.) Nobody in the City's Buildings Department received information or a qualified opinion that the Property was not dangerous. (*Id.* ¶ 52.) And the dangers were apparent: a passerby, trespasser, first responder, or child could enter the Property and trigger its collapse, or debris could fly off and injure a person or property in the vicinity.[5] These risks culminated in the City's finding that the Property was "unsound and in imminent danger of collapse" which "constitute[d] an actual and imminent danger to the public." (R. 275-15.) All of this evidence supports a finding of exigency, which justifies the lack of more robust pre-demolition process. *Siebert*, 256 F.3d at 260 n.10 ("The government may of course seize [property] without a pre-deprivation hearing if exigent circumstances exist.").

The plaintiffs have identified no evidence to the contrary, and their arguments are either not substantiated by the record or are otherwise deficient. *Brown*, 179 F.4th at 588 (summary judgment is appropriate when there is "an absence of evidence to support the non-moving party's claims"). First, they attempt to poke holes in the

---

[5] In fact, part of the roof had already fallen into the yard once, and several trespassers had entered the Property. (R. 275 ¶¶ 49, 78.)

individual defendants' credibility. (R. 290 at 3.) Aside from minor objections such as a dearth of photos from inside the Property and a misnaming of a supervisor, the plaintiffs offer no evidence that even suggests the Property was structurally sound or safe. Next, the plaintiffs argue that the exigent circumstances inquiry is unsuitable for resolution on summary judgment. (*Id.*) That is not the case where, as here, there is no genuine factual dispute as to the exigency. *Brown*, 179 F.4th at 588. Further, they argue that they were entitled to more pre-demolition notice under state law. (*Id.* at 2, 4.) However, a supposed violation of state law alone is not a denial of due process. *Dietchweiler ex rel. Dietchweiler v. Lucas*, 827 F.3d 622, 629 (7th Cir. 2016) ("But as we have repeatedly explained, a failure to follow state statutes or state-mandated procedures does not amount to a federal due process claim of constitutional magnitude."). Next, the plaintiffs argue that the defendants manufactured the exigency by delaying the inspection and demolition. (*Id.* at 4.) But Ficco inspected the property the day following the fire, and the City deliberated for a month before concluding that expedited demolition was required. Last, that the City has faced lawsuits regarding allegedly unlawful demolitions (*see id.*) does not constitute evidence of a due process violation in this case.

In the end, all the evidence in the record regarding the Property's condition points in the same direction: that it posed an actual and imminent danger. Given this exigency, the plaintiffs were not deprived of due process. *Siebert*, 256 F.3d at 659. The plaintiffs have failed to present evidence substantiating their claim, meaning there are no factual disputes that require resolution. *Brown*, 179 F.4th at 586 ("Summary

judgment is the 'put up or shut up' moment in litigation."). Because no reasonable jury could find that exigent circumstances did not justify expedited demolition of the Property, the Court grants summary judgment on the plaintiffs' due process claim.

### B. Fourth Amendment Claims

The plaintiffs argue that the demolition was an unreasonable seizure and that the defendants' entrance onto the Property was an unreasonable search. (R. 77 ¶¶ 81–96.) The Court addresses each claim in turn.

#### 1. Seizure

A seizure under the Fourth Amendment occurs when the government meaningfully interferes with someone's property. *Dix v. Edelman Fin. Servs., LLC*, 978 F.3d 507, 513 (7th Cir. 2020) (quoting *United States v. Jacobsen*, 499 U.S. 109, 113 (1984)). There is no question that the demolition was a seizure. But the Fourth Amendment prohibits only unreasonable seizures. *Id.* at 516. The reasonableness of a seizure of property "depends on not only when a seizure is made, but also on how it is carried out." *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1011 (7th Cir. 2000) (quoted source omitted). The reasonableness inquiry generally requires a "balancing of governmental and private interests." *Bell v. City of Chicago*, 835 F.3d 736, 739 (7th Cir. 2016) (quoted source omitted).

There is no genuine factual dispute as to the demolition's reasonableness. The plaintiffs have failed to provide any evidence contesting the Property's dangerous condition, so their argument that the seizure was unreasonable because it lacked an emergency justification fails for the same reasons their Fourteenth Amendment claim does. Instead, the record shows that the conduct and conclusions reached were

reasonable. The CFD and City building inspector documented their investigations and each concluded that the Property was structurally unsound and irreparable. The individual defendants reasonably relied on these conclusions and received no information that the Property was safe. (*See, e.g.*, R. 275 ¶ 52.) This unrebutted evidence establishes that the demolition was reasonable.

Moreover, the balance of governmental and private interests shows that the defendants' conduct was reasonable. *Bell*, 835 F.3d at 739. Public safety is one important government interest, which here outweighs the private interest of allowing an uninhabitable and irreparable private residence to stand (particularly given the danger it posed). *See Scott v. Harris*, 550 U.S. 372, 383 (2007) (referencing the "paramount governmental interest in ensuring public safety"). After assessing the risks, the defendants sensibly concluded that demolition was in the best interest of the public. The plaintiffs offer no evidence or argument to the contrary.

The demolition also adhered to federal due process and local ordinance, both of which further support its reasonableness. As explained above, the record establishes that the plaintiffs were given the process they were owed. Moreover, a City ordinance in effect in 2018 empowered the City to demolish a building on an emergency basis if it found that the building posed an actual and imminent danger to the public. (R. 275 ¶¶ 53, 66); Chicago, Ill., Mun. Code § 13-8-100. Because there is no material factual dispute that the Property posed an actual and imminent danger, the City's conclusion was reasonable. *See Freeman v. City of Dallas*, 242 F.3d 642, 653 (5th Cir. 2001) ("The ultimate test of reasonableness is fulfilled in this case by the City's adherence to its

ordinances and procedures[.]”). The plaintiffs tersely argue that the City exceeded its police powers by demolishing the Property, but protecting the community is a core exercise of that power. *Devines v. Maier*, 728 F.2d 876, 883 (7th Cir. 1984) (a municipality’s regulation of housing is “a valid exercise of the police power”). Accordingly, no reasonable jury could conclude that the seizure was unreasonable.

**2. Search**

The complaint also alleges that the defendants illegally searched the Property, yet neither party discusses this claim. (*See* R. 77 ¶¶ 91–96.) The Court understands the claim to apply to Ficco’s inspection, as there is no evidence that another individual defendant entered the Property. Like seizures, Fourth Amendment searches must be reasonable. *United States v. Jackson*, 132 F.4th 1019, 1020 (7th Cir. 2025). A search conducted with consent of the property owner or an authorized third party is reasonable. *United States v. Coleman*, 154 F.4th 558, 561 (7th Cir. 2025). Valid consent may also come from a third party with apparent authority. *United States v. Richards*, 741 F.3d 843, 850 (7th Cir. 2014).

The plaintiffs’ search claim fails for the same reasons their seizure claim does: Ficco’s entrance to assess the damage was reasonable. The inspection was limited, resulted in no property damage, and was in furtherance of public safety. Further, Ficco attested that he arrived at the Property and “explained that I was from the Department of Buildings for an inspection” to two individuals. (R. 275-5 ¶ 4.) This evidence shows that Ficco received consent to enter the Property. It matters little whether this consent came from the plaintiffs or individuals Ficco reasonably believed could authorize his inspection, as each are constitutionally permissible.

*Coleman*, 154 F.4th at 561; *Richards*, 741 F.3d at 850. Because no reasonable jury could conclude that the search was unreasonable, the Court grants summary judgment in favor of the defendants on the plaintiffs' search claim.

### C. *Monell* Liability

"[A] municipality is liable under § 1983 only 'for its own violations of the federal Constitution and laws.'" *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 617 (7th Cir. 2022). The complaint alleges that the City violated the law by employing unlawful customs, practices, or policies such as failing to adequately train inspectors and demolishing homes without justification. (*See, e.g.*, R. 77 ¶¶ 43–44, 85–87); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). This claim fails as a matter of law. First, the plaintiffs have identified no evidence regarding any custom, policy, or practice maintained by the City, which dooms the claim. *See Katz-Crank v. Haskett*, 843 F.3d 641, 647 (7th Cir. 2016). Further, as explained above, the plaintiffs have failed to establish a constitutional violation. Without that, there can be no *Monell* claim. *Est. of Thomson v. Behn*, 181 F.4th 724, 736 (7th Cir. 2026) (citation omitted) ("Because the [plaintiff] fails to establish an underlying constitutional violation, [the municipal defendant] cannot be held liable under *Monell*."). Accordingly, the Court grants summary judgment to the City on this claim and the other constitutional claims.

### D. Qualified Immunity

"Government officials enjoy qualified immunity from suit under § 1983 unless their conduct violates clearly established law." *Zorn v. Linton*, 607 U.S. 568, 571 (2026). This extends to building inspectors employed by a municipality. *Malinowski v. DeLuca*, 177 F.3d 623, 627 (7th Cir. 1999). "A plaintiff can overcome a defendant's

assertion of qualified immunity at summary judgment 'by showing (1) there is a dispute of material fact as to whether the official violated a 'statutory or constitutional right,' and (2) the right was 'clearly established at the time[.]'" *Smith v. Price*, 188 F.4th 988, 996 (7th Cir. 2026) (quoted source omitted).

Even if the plaintiffs could establish a constitutional violation, they have failed to show that the defendants violated a clearly established right. "A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Zorn*, 607 U.S. at 572 (quoted source omitted). This generally requires a plaintiff to identify on-point precedent and define the right violated with a "high degree of specificity." *Id.*

The plaintiffs have neither identified an analogous case nor specifically defined the right they argue was violated. In any event, it is not sufficiently clear that every reasonable official would understand that the individual defendants' conduct violated the law. Ficco conducted an inspection and documented his findings that the Property was structurally unsound. Herrera spoke with Ficco, reviewed pertinent reports, and was aware of the Property's dangerous condition. Relying on that and his professional experience, Herrera reasonably concluded that emergency demolition was prudent. Frydland similarly reviewed relevant materials and concluded that demolition was warranted. In other words, the individual defendants executed their ordinary job duties, deliberated on the proper course of action, reached a conclusion supported by the evidence before them, and issued a demolition order consistent with the applicable local ordinance. Qualified immunity protects "all but the plainly

incompetent or those who knowingly violate the law." *Schneiter v. Carr*, 148 F.4th 438, 446 (7th Cir. 2025) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). The record establishes that the individual defendants were neither. They are therefore entitled to qualified immunity on the constitutional claims.

## II. THE STATE LAW CLAIM

The plaintiffs' remaining claim is that the demolition violated Illinois state law. (R. 77 ¶¶ 61–80.) The Court has granted summary judgment to the defendants on each of the plaintiffs' claims under federal law. With no federal claims in play, the Court declines to exercise supplemental jurisdiction over the plaintiffs' remaining state law claim. 28 U.S.C. 1367(c); *Moore v. W. Ill. Corr. Ctr.*, 89 F.4th 582, 596 (7th Cir. 2023) ("[H]aving resolved all of the federal claims, the court was well within its discretion to decline to exercise supplemental jurisdiction over the state law claims.").

## CONCLUSION

The defendants' motion for summary judgment [272] is granted. The plaintiffs' motion to deny the defendants' summary judgment motion [289] is denied. The November 18, 2026, final pretrial conference and November 30, 2026, trial date are stricken. Civil case terminated.

Date: October 16, 2026

JEREMY C. DANIEL
United States District Judge